Cecil J. Baxter, Jr. et al. Trading as Gem City Vineland Company, Appellants, v. Atchison, Topeka and Santa Fe Railway Company, Appellee.

Gen. No. 9,268.

Opinion filed June 23, 1941.

SCOFIELD & BELL, of Carthage, for appellants.

WM. J. MILROY and JOSEPH S. LAFFERTY, both of Chicago, for appellee.

MR. JUSTICE HAYES delivered the opinion of the court.

The plaintiffs filed their complaint in the circuit court of Hancock county to recover the sum of $72.45, alleged freight overcharge, collected by the defendant under a contract to carry 450 baskets of pears from Niota, Illinois, to Deadwood, South Dakota. Plaintiffs allege that it paid defendant the charges for transportation, but that the defendant refused to deliver said pears to consignee, unless consignee paid defendant the sum of $72.45, which sum consignee was forced to pay to secure delivery of the shipment and consequently deducted the same from the sale price of the pears. The plaintiffs allege damages in that amount.

The defendant failed to enter an appearance or file an answer by return day. A default judgment was taken on February 1, 1939, and on February 15, 1939 defendant filed its motion, supported by affidavits, to vacate the default judgment. The affidavit, in support of said motion, alleged that the tariff charge collected from appellants, plus the charge collected from the

consignee for the transportation of the shipment, was the correct and lawful charge in accordance with the tariffs and schedules duly filed with the Interstate Commerce Commission, as required by law, and that appellants' theory of recovery was based upon an alleged misquotation of tariff charges by an agent of the appellee which did not as a matter of law constitute an actionable breach of civil duty by reason of the requirements of the Interstate Commerce Act. The affidavit further alleges that the defendant had a full and complete defense on the merits; that to permit the judgment to stand and become final would result in an unlawful preference of appellants as to freight charges applicable to shipments moving in interstate commerce and a violation of the federal law relating thereto.

Section 1 of the Interstate Act provides that transportation of property moving by rail in interstate commerce shall be subject to the Act. Section 6 (1) of the Act requires common carriers by rail engaged in interstate commerce to file a tariff schedule with the commission, showing all charges for transportation between points on its own route and points on the route of any other carrier by rail, when a through route and joint rate have been established. Section 6 (7) forbids rail carriers to engage in the transportation of property in interstate commerce unless the charges upon which the same are transported have been filed with the Interstate Commerce Commission and published as required by the Act.

It is proper for a shipper to maintain a common-law action in a State court for damages sustained by the collection of charges on an interstate shipment, in excess of a lawful tariff. The shipper must allege and prove that charges were exacted by the carrier in excess of such traiff schedule. *Sonken-Galamba Corp. v. Missouri Pac. R. Co.*, 225 Mo. App. 1066, 40 S. W. (2d) 524.

In *Bushwick McPhilben Corp. v. Bush Terminal R. Co.*, 8 F. Supp. 684, the District Court for the Eastern District of New York said, p. 684:

"There is no averment in the complaint concerning the filing of any tariff of rates by the defendant with the Interstate Commerce Commission and the approval of such tariff by that body, followed by an allegation that the rates paid by the plaintiff were in excess of the rates established by such tariff. In other words, there is no issue tendered to the defendant on that subject.

"The defendant is entitled to a clear and unmistakable allegation on that subject, which it can either admit or deny."

The complaint failing to allege that the freight charges collected were in excess of the lawful, established tariffs, failed to state a cause of action and it is error to enter judgment against a defendant by default on a complaint which does not state a cause of action against the defendant. *Whalen v. Twin City Barge & Gravel Co.*, 280 Ill. App. 596, 611; *Buck v. Citizens' Coal Min. Co.*, 254 Ill. 198, 202.

It is provided in par. 7, sec. 174, ch. 110, Ill. Rev. Stat., 1939 [Jones Ill. Stats. Ann. 104.050] State Bar Edition as follows: "The court may in its discretion before final judgment, set aside any default, and may within thirty days after entry thereof set aside any judgment or decree upon good cause shown by affidavit, upon such terms and conditions as shall be reasonable."

The trial court allowed the motion to vacate the judgment and for leave to plead. In *Mutual Ins. Co. v. Carnahan*, 122 Ill. App. 540, this court said: "An application to set aside a default is addressed to the sound legal discretion of the court, and its decision thereon cannot be assigned for error unless there has been gross abuse of such discretion." The matter of setting aside a default has always been held to be

within the sound discretion of the court, which will not be interfered with, on appeal, except where that discretion is clearly abused. *Kloepher v. Osborne,* 177 Ill. App. 384; *Andrews v. Campbell,* 94 Ill. 577; *Greenleaf v. Roe,* 17 Ill. 474.

In view of the fact that the complaint failed to state a cause of action, and that the application to set aside the judgment entered by default was made within 30 days of its entry, we cannot hold that the trial court abused the discretion vested in it.

The defendant made a motion to dismiss the complaint for failure to state a cause of action which motion was allowed by the court. The plaintiff did not ask leave to file an amended complaint and the suit was dismissed, and the plaintiffs prosecuted this appeal.

Appellants rely upon the cases of *Kirby v. Chicago & A. R. Co.,* 242 Ill. 418, and the *Illinois Cent. R. Co. v. Seitz,* 214 Ill. 350. The *Seitz* case was not an *interstate* commerce case but an *intrastate* and is not applicable here. The *Kirby* case marked a milestone on the question of liability, obligations and duties of carriers engaged in interstate commerce and the Supreme Court of Illinois was reversed by the United States Supreme Court, opinion reported in volume 225 U. S. 155. The court in that case stated: ''That the defendant in error did not see and did not know that the published rates and schedules made no provision for the service he contracted for is no defense. For the purposes of the present question he is presumed to have known. The rates were published and accessible, and, however difficult to understand, he must be taken to have contracted for an advantage not open to others. *Texas & P. R. Co. v. Mugg,* 202 U. S. 242.''

In support of the motion to dismiss the suit, the defendant presented and filed an affidavit setting out the published tariffs applicable to this shipment which disclosed the carrier had not collected any excess over

the established tariffs and under the authority of the *Mugg* case, the defendant was warranted in collecting the amount that it did. The court stated in the *Mugg* case that:

"The clear effect of the decision was to declare that one who has obtained from a common carrier transportation of goods from one state to another at a rate, specified in the bill of lading, less than the published schedule rates filed with and approved by the Interstate Commerce Commission, and in force at the time, whether or not he knew that the rate obtained was less than the schedule rate, is not entitled to recover the goods, or damages for their detention, upon the tender of payment of the amount of charges named in the bill of lading, or of any sum less than the schedule charges; in other words, that, whatever may be the rate agreed upon, the carrier's lien on the goods is, by force of the act of Congress, for the amount fixed by the published schedule of rates and charges, and this lien can be discharged, and the consignee can become entitled to the goods, only by the payment, or tender of payment, of such amount."

Under the Federal Act, the defendant would have been liable to conviction with severe penalties on its failure to collect the full charges. The Supreme Court of the United States in *Lowden v. Simonds-Shields-Lonsdale Grain Co.*, 306 U. S. 516, stated:

"Until changed, tariffs bind both carriers and shippers with the force of law. Under § 6 of the Interstate Commerce Act the carrier cannot deviate from the rate specified in the tariff for any service in connection with the transportation of property. That section forbids the carrier from giving a voluntary rebate in any shape or form. This Court has had occasion recently to sustain action of the Commission aimed at carriers' practices resulting in collection of less than the tariff rate. It is equally important to aid the efforts of a carrier in collecting published charges in full. In-

voluntary rebates from tariff rates should be viewed with the same disapproval as voluntary rebates.''

For the reasons above stated, we find the circuit court did not commit error in setting aside the default judgment and granting the defendant leave to plead nor in its order dismissing the suit. The judgment of the circuit court is affirmed.

*Judgment affirmed.*